No. 18,538.

People of the State of Colorado, ex rel. Duke W. Dunbar, Attorney General v. People ex rel. City and County of Denver.
(349 P. [2d] 142)

Decided January 25, 1960.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Neil Tasher, Assistant, Mr. Floyd B. Engeman, Assistant, for plaintiff in error.

Mr. John C. Banks, City Attorney, Mr. James H. Snyder, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

In this opinion we will refer to plaintiff in error, People of the State of Colorado, as the State, and to defendant in error as Denver. Where reference to parties who

were defendants in the trial court but not parties to this writ of error, is necessary, said parties will be referred to as "users of gas" or as "owners of refunds."

The Federal Power Commission ordered a reduction in rates, as of May 20, 1942, for the users of natural gas in Colorado that were served by the Colorado Interstate Gas Company. This order was later appealed to the Supreme Court of the United States and affirmed, *Colorado Interstate Gas Company v. Federal Power Commission, et al.*, 324 U.S. 581. Pursuant to such order, the Colorado Interstate Gas Company, on or about October 1, 1945, filed new schedules of rates and charges with the Federal Power Commission. These rates and charges were made effective as to all bills rendered on and after May 20, 1942.

During the period from 1942 to 1945 approximately $8,524,143.08 was collected as overcharges. These overcharges were deposited, or were to be deposited, with the First National Bank of Denver. Such overcharges were determined by the court to belong to and be the property of the users of gas served by the Public Service Company of Colorado. Following the court order of 1945, a Master was appointed, who, with the help of a Special Auditor, supervised the task of distributing refund checks. Distribution was carried on until October 29, 1951, when both the Master and the Special Auditor were discharged by the court.

In 1947 the General Assembly of Colorado adopted the statute giving rise to this controversy, namely, C.R.S. 1953, 115-8-1 through 115-8-4. The pertinent portion of this statute is the first section thereof which reads as follows:

"In all cases where there has been an overcharge by a public utility corporation for any commodity or service on account of which rights to refunds have accrued to any municipality or the inhabitants thereof by reason of services or commodities received through the use of the streets of such municipality, with or without a franchise,

and a refund of the amount overcharged has been directed by any court or other authorized governmental tribunal, and a part of such refund has not been made because of inability to find the persons entitled thereto within the time limit fixed by such court or tribunal, then the court or tribunal shall direct that any such undistributed balance shall be turned over to the municipality."

Under appropriate procedures governed by federal law, the Clerk of the Circuit Court of Appeals for the 10th Circuit deposited with the United States Treasurer the sum of $162,475.73, representing undistributed refunds. After the money was deposited in the United States Treasury, Denver initiated this action in the district court of Denver, Colorado, by filing a complaint entitled "Proceeding for the Escheat of Property." In its complaint Denver seeks to have itself declared to be the lawful owner of part of the unclaimed funds in the amount of $131,302.84. Its claim is founded upon the 1947 Act, C.R.S. '53, 115-8-1 through 115-8-4. The defendants named in this action are members of a class, being the users of gas and the lawful owners of the unclaimed refunds. All of the defendants have absented themselves without claiming the refund due to each of them, and are all in default after service effected upon them by registered mail or by publication.

The action instituted by Denver seeking recovery of the money was brought to the attention of the Attorney General of the State of Colorado. Thereafter, a conference was held with the Governor of the State of Colorado, who required the Attorney General, on behalf of the People of the State of Colorado, to intervene in the action. Pursuant to said Requirement of Appearance the Attorney General moved to intervene in the action as a plaintiff and filed a complaint and cross-claim.

The State grounds its claim to the funds upon three principles: (1) That the State has a common-law right as a sovereign state by way of escheat or "bona vacantia"

to claim the funds; (2) that the State is entitled to the funds under C.R.S. '53, 152-14-14; and (3) the statute relied on by Denver is unconstitutional and void.

There were no questions of fact to be determined by the trial court, the only issues being questions of law. For these reasons both the State and Denver filed Motions for Summary Judgment, each seeking to be declared the rightful owner of the funds in controversy. The trial court considered and heard both oral and written arguments relative thereto and rendered judgment in favor of Denver on its Motion for Summary Judgment; denied the motion of the State; and dismissed the complaints and cross-claims, as amended, filed by the State. At the same time the trial court entered an order dispensing with a motion for a new trial or a rehearing. From this adverse decision the State seeks reversal by writ of error.

As we view the issues, the State cannot prevail in this action if the statute relied upon by Denver is constitutional. Assuming, without deciding, that the common law doctrine of bona vacantia exists in this jurisdiction, it may be altered or abolished by act of the legislature. C.R.S. '53, 152-14-14 (3), which the State contends should control if the doctrine of bona vacantia is not recognized, provides in pertinent part that:

" * * * any person, * * * or other entity, in possession of moneys paid to him or it or in his or its possession in any fiduciary capacity, and the said moneys are unclaimed, or the person to whom the person in possession may lawfully pay the same, or the person who may be entitled thereto is unknown or absent or fails to receive and properly receipt therefor, may pay said moneys to the state treasurer; and the state shall be answerable for the same, without interest, any time within twenty-one years after the same shall have been paid to the state treasurer; such payment to the state treasurer shall discharge the person making the same from any further liability or responsibility for such moneys."

It is argued by the attorney general that this statute is of general application and that the Act of 1947 is unconstitutional as a special law within the prohibition of Article V, Section 25 of the Constitution of Colorado, which prohibits the enactment of a special law where a general law can be made applicable. It is also contended that the 1947 statute is unconstitutional in that it violates Article IX, Section 3 of the constitution which contains in pertinent part the following:

"The public school fund of the state shall forever remain inviolate and intact; * * * No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated, except as herein provided."

Section 5 of Article IX provides:

"The public school fund of the state shall consist of * * * all estates that may escheat to the state; * * *."

Counsel for the State further argue that the statute violates Article II, Section 11 of the constitution, prohibiting the passage of a law retroactive in operation. If none of the foregoing arguments testing the constitutionality of the Act are valid, then the 1947 Act controls in this action and the judgment should be affirmed.

Questions to be Determined.

First. *Is the 1947 statute a special law within the contemplation of the constitutional provision which provides that, " * * * where a general law can be made applicable, no special law shall be enacted"?*

■ This question is answered in the negative. C.R.S. '53, 115-8-1 through 115-8-4, and C.R.S. '53, 152-14-14 (3), are escheat statutes of equal dignity, each dealing with a specific kind of property. The Act relied on by Denver deals with unclaimed overcharges due customers of utility corporations. The Act relied on by the State deals with unclaimed balances of estates of deceased persons, minors or incompetents, subject to administration by the county court. The word "estates" is used in each of these statutes and the Attorney General argues that in the

statute upon which he relies the word should be given the broadest coverage and that it includes all property of whatever kind, whether or not it is involved in probate proceedings. A familiar rule of statutory construction which we think is applicable here is correctly stated in 31 C.J.S. §1, page 8, as follows:

"As used in statutes, if not expressly defined, the import of the term 'estate' depends in a great degree on its association with other expressions, and must be found from the context and purpose of the statute, and the fixed absolute sense of the word in the abstract must give way to the connection in which it is used. * * * "

■ We are satisfied that in adopting the statute relied on by the State, the legislature intended the word "estates" as there used to be construed as applicable to property of decedents, minors and mental incompetents. In *Toll v. City and County of Denver,* 139 Colo. 462, 340 P. (2d) 862, different statutes were relied upon by the parties, and one of them antedated the other. In that case the court said, inter alia:

"We are not concerned with the status of these statutes prior to 1953 when the General Assembly revised and adopted the laws of Colorado as the Revised Statutes of 1953. Both being included in such revision, both are to be given effect and are deemed to be complementary rather than conflicting."

This same principle is applicable here. The statute relied on by the State and that relied on by Denver must both be given effect if this can be done by interpretation. The 1947 statute granting particular unclaimed funds to cities and other governmental units sets up a class based on reasonableness, and all persons or units of government coming within this class receive treatment free from any discrimination. *McClain et al. v. People,* 111 Colo. 271, 141 P. (2d) 685; *People ex rel. Johnson v. Earl et al.,* 42 Colo. 238, 94 Pac. 294; *Driverless Car Company et al. v. Armstrong, Secretary of State,* 91 Colo. 334, 14 P. (2d) 1098.

Second. *Does the 1947 Act, C.R.S. '53, 115-8-1 through 4, violate Article IX, Section 5 of the Colorado Constitution relating to the unviolability of the school fund?*

 This question is answered in the negative. The pertinent language of this provision of the constitution does no more than lay down the general principle for the legislature that property defined by the legislature as an "estate" and which the legislature declares to be escheatable to the state, shall go to the school fund. See *In Re Montello Salt Co.,* 88 Utah 283, 53 P. (2d) 727. The pertinent constitutional provision reads that, " * * * all estates that *may* escheat to the state * * *." Thus it is left to the legislature to determine the character and type of estates which shall escheat to the sovereign. The word "estates" is amenable to statutory definition.

 We find no merit in the contention that the 1947 statute must be given retrospective effect in order to uphold the claim of the city. At the time the Act was adopted there had been no determination that unclaimed funds existed in the possession of anyone. At that time the gas customers were the sole owners of the fund during the impoundment period. Provisions of the federal law, which commands the federal court to hold funds for an additional five years, operate to extend the time within which the gas users remained the sole owners of the fund until January 1957. It was only at that time that unclaimed funds came into existence.

The judgment is affirmed.

MR. JUSTICE HALL not participating.