Al J. Motter, Jr. Executive Secretary Colorado Racing Commission 201 E. Colfax, Room 220 Denver, CO 80203
Dear Mr. Motter:
Your letter of January 9, 1980 requests an opinion as to the effect of House Bill 1611 which, inter alia, amends C.R.S. 1973, 12-60-119.
QUESTION PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents the following question:
Whether funds accumulated and deposited with the Colorado Racing Commission (or the state treasurer) prior to July 1, 1979, pursuant to unamended section 12-60-119(1) and (2), C.R.S. 1973, for the purpose of the breeders award and supplemental purse fund, may now be used for this purpose as well as for owners awards and the administrative fee described in section 12-60-119, as amended.
 My conclusion is "no." It is my opinion that funds deposited with the Colorado Racing Commission prior to July 1, 1979 pursuant to C.R.S. 1973, 12-60-119 may not be used for owners awards or for the administrative fee described in section 12-60-119, as amended.
ANALYSIS
Section 12-60-119, as amended, became effective on July 1, 1979. It creates a fund to be known as the horse breeders and owners awards and supplemental purse fund. Prior to the amendment, a horse breeders award and supplemental purse fund existed; however, no owners award fund existed. In addition, the amendments to C.R.S. 1973, 12-60-119 authorize for the first time the payment, pursuant to rules adopted by the Colorado Racing Commission, of an administrative fee to the Colorado horse breeder associations for registering and maintaining breeding records in connection with the administration of the newly created fund. Under the amendment, the fee is not to exceed 5 percent of the total funds generated by unclaimed parimutuel tickets and such funds as are provided by C.R.S. 1973, 12-60-109(2)(c).
Section 12-60-119(1), as amended, states in pertinent part that the fund in question "shall consist of moneys deposited thereto by the commission . . . to be held by the state treasurer, which moneys are hereby appropriated to be paid out as provided in this section and by rule or regulation of the commission." Section 12-60-119(2), as amended, provides that the moneys for the fund are to be derived from two sources: (1) a percentage of gross receipts from parimutuel waging pursuant to C.R.S. 1973, 12-60-119(2)(c) and (2)(d); and (2) proceeds from unclaimed parimutuel tickets.
The money received from these two sources is required by statute to be paid to the commission on a different schedule. Moneys derived pursuant to section 12-60-109(2)(c) and (2)(d) are required to be paid to the commission on a daily basis, while moneys derived from unclaimed parimutuel tickets for each horse race meet are required to be paid "to the commission for the horse breeders and owners awards and supplemental purse fund after a period of one year following the end of such meet." C.R.S. 1973, 12-60-119(2).
Turning to the specific question raised in your letter, it is a long established principle that statutes are to be construed to apply prospectively unless a contrary intent is clearly manifested. Taylor v. PERA, 189 Colo. 486,542 P.2d 383 (1975). And, in 1973, the legislature adopted this rule of common law construction by declaring a statute is presumed to be prospective in its operation. C.R.S. 1973,2-4-202. Furthermore, article II, section 11 of the Colorado Constitution prohibits the enactment of laws which operate retrospectively.
The amendment to section 12-60-119 does not suggest an intent to depart from the presumption of prospective application. The statute states, inter alia, that:
 There is hereby created a fund to be known as the horse breeders and owners awards and supplemental purse fund which shall consist of monies deposited thereto by the commission for the purpose of this section, which funds are hereby appropriated. . . .
C.R.S. 1973, 12-60-119(1), as amended (emphasis supplied).
The use of this forward-looking language indicates a legislative intent to create a new fund to be utilized for new purposes. Thus, the owners awards and the administrative fee may not be funded with money deposited prior to July 1, 1979, the effective date of the amendment.
With regard specifically to moneys paid daily to the commission prior to July 1, 1979 and derived pursuant to section 12-60-109(2)(c) and (2)(d), the effect of this language is quite clear. All moneys deposited with the commission prior to July 1, 1979 must be used solely for the horse breeders award and supplemental purse fund. Any use of those moneys for owners awards would be an attempt to apply the law retrospectively and in a manner inconsistent with legislative intent.
The above reasoning applies equally to proceeds derived from unclaimed parimutuel tickets which, under section 12-60-119(2), are also required to be deposited with the commission for the newly created fund. However, since proceeds from unclaimed parimutuel tickets are deposited with the commission not on a daily basis, but one year following the end of the race meet in which the ticket is purchased, a short additional explanation is necessary.
As with moneys derived pursuant to C.R.S. 1973, 12-60-109(2)(c) and (2)(d), funds derived from unclaimed parimutuel tickets become part of the horse breeders and owners awards and supplemental purse fund only after they are deposited in the fund by the commission pursuant to the statutory schedule (in this case, one year after the end of the race meet in which the tickets were purchased). Thus, as with moneys derived pursuant to section 12-60-109(2)(c) and (2)(d), the significant event to consider is the date the funds are deposited with the commission. All proceeds derived from unclaimed parimutuel tickets which were deposited with the commission prior to July 1, 1979 must be used for the breeders award and supplemental purse fund, which was the fund in existence at that time. In contrast, proceeds from unclaimed parimutuel tickets deposited with the commission pursuant to the statute on or after July 1, 1979 are to be applied to owners awards, as well as to breeders awards and supplemental purses, as specified in the amended statute.[1]
Following the same reasoning, a rule adopted by the commission allowing a portion of the fund to be paid to the Colorado horse breeders associations for administering the fund must apply only to those funds deposited with the commission or state treasurer after July 1, 1979. The provisions of law authorizing the payment of such administrative fee, section 12-60-119(1), as amended, are clearly worded to have only prospective effect. The funds from which this fee could be derived can only be defined to include money deposited with the commission from July 1, 1979 forward.
SUMMARY
To briefly summarize my opinion, all moneys deposited with the Racing Commission prior to July 1, 1979 pursuant to C.R.S. 1973, 12-60-119 must be applied to the breeders award and supplemental purse fund and may not be applied to owners awards or the new administrative fee. However, all such funds deposited with the commission on or after July 1, 1979 should be applied to the newly created horse breeders and owners awards and supplemental purse fund and, pursuant to commission rules, to the administrative fee provided for in C.R.S. 1973, 12-60-119(1).
Very truly yours,
 J.D. MacFARLANE Attorney General
RACING, HORSE
STATUTORY CONSTRUCTION
C.R.S. 1973, 12-60-119(1),(2)
REGULATORY AGENCIES, DEPT.
Racing Events, Div. of
Funds deposited with the Colorado Division of Racing prior to July 1, 1979 pursuant to C.R.S. 1973, 12-60-119(1), (2) cannot be used for owners awards or the administrative fee described in the statute, as amended in 1979.
[1] Construing the amended statute in this manner does not constitute an improper retrospective application of its terms. This is true even though such funds may be derived from tickets purchased prior to the effective date of the amendment, since no rights to unclaimed parimutuel ticket proceeds deposited after July 30, 1979 vested in the beneficiaries of the old fund. The interest, if any, of those beneficiaries in said funds prior to their deposit with the commission was no more than a mere expectancy or an inchoate possibility concerning which the concept of retroactivity is inapplicable. SeePeoples Natural Gas v. PUC, 197 Colo. 152,590 P.2d 960 (1979) and 2 Sands, Sutherland StatutoryConstruction, § 41.06 (4th ed. 1973). Cf.People ex rel. Dunbar v. People ex rel. Cityand County of Denver, 141 Colo. 459, 349 P.2d 142 (1960) and City and County of Denver v. People, 103 Colo. 563 [103 Colo. 565], 88 P.2d 89 (1939).