No. 14,621.

People to the use of the Federal Land Bank of Wichita *v.* Ginn et al.

(106 P. [2d] 479)

Decided September 23, 1940. Rehearing denied October 28, 1940.

418

Mr. W. W. PLATT, Mr. W. E. PEPPERELL, Mr. CONRAD L. BALL, Mr. J. P. FLINN, Mr. DONALD I. MITCHELL, for plaintiff in error.

Mr. Edgar McComb, Mr. Mark H. Harrington, for defendants in error.

*En Banc.*

Mr. Justice Otto Bock delivered the opinion of the court.

This is an action on the official bond of a county clerk and recorder, founded upon his alleged negligence in erroneously transcribing the legal description of real property contained in a deed of trust on the records in his office, whereby plaintiff in error, plaintiff below, became a second rather than a first lienor of the real estate and was injured thereby. Defendants demurred to the complaint, setting forth three grounds: (1) Insufficiency of allegation of facts to state a cause of action; (2) the three-year statute of limitations (section 6, chapter 102, '35 C.S.A.); (3) the six-year statute of limitations (section 1, chapter 102, supra). The demurrer was overruled on all grounds. Thereafter defendants filed their answer, setting forth therein five separate defenses: (1) A general demurrer on the ground of insufficiency of allegation of facts to state a cause of action; (2) the three-year statute of limitations; (3) the six-year statute of limitations; (4) a general denial of any negligence on the part of the defendant Ginn in performing his duties, and a denial of loss to plaintiff by reason of any acts of said defendant; (5) admissions and denials contained in the fourth defense, and, in addition, nonliability by reason of the entries by defendant Ginn in the reception and index books; further, that plaintiff had constructive notice of the Burnham deed of trust (the alleged prior encumbrance) from the reception and index books, and that it had not examined the records in the office of the county clerk, but had relied solely upon an abstract of title in determining the status of the title. A motion by plaintiff to strike a part of defend-

ants' answer was overruled. Thereafter plaintiff filed its replication. The case was tried upon an agreed statement of facts. The court found the issues raised by the pleas of the statutes of limitation in favor of defendants, deeming it unnecessary to determine whether the three-year or six-year statute applied, because the action was not commenced within either period, and also deeming it unnecessary to pass upon the issues raised by the first, fourth and fifth defenses. Judgment of dismissal was duly entered. Plaintiff is here on writ of error, seeking reversal. Briefly, the facts are as follows:

In August, 1924, defendant Robert Ginn was the clerk and recorder of Alamosa county; the surety on his official bond, which was in the principal sum of $5,000, was defendant, the American Surety Company. The bond was conditioned on the faithful performance by Ginn of the duties of his office. August 8, 1924, one Hyndman executed and delivered to Cecelia H. Burnham a deed of trust, to secure payment of a promissory note in the sum of $500, which deed conveyed to the public trustee, in trust, the southwest quarter of section 7, township 37, range 11 east, New Mexico principal meridian, in Alamosa county. August 11, 1924, Burnham filed this deed of trust in the office of clerk and recorder Ginn, who, upon receipt thereof, made the proper entry concerning it in the reception book in his office, and in the column headed "Remarks" wrote, in abbreviated form, a description of the property as "SW ¼ 7-37-11." Ginn also duly and regularly indexed the deed of trust in both direct and inverse indices, including the book and page of its record, as "Book 28, page 246," and under the heading "Description of Property," the description as contained in the deed of trust; however, in recording and transcribing the instrument at length in book 28, page 246, of the records, the real estate conveyed was erroneously described as the southeast quarter, instead of the southwest quarter, the cor-

rect description, which error remained on the records during the period with which we here are concerned. Thereafter, in September, 1925, Hyndman made an application to plaintiff the Federal Land Bank of Wichita, Kansas, representing that he was the owner in fee simple of the southwest quarter of section 7; that the property was free and clear of all liens and encumbrances, and furnished the bank an abstract of title covering the southwest quarter of section 7, prepared and certified to August 31, 1925, at 5 p.m., by the Alamosa Abstract Company, authorized to render such service. This abstract was examined by the bank's attorney, who did not, nor did the bank, make any examination of the original records in the office of the clerk and recorder of Alamosa county. The abstract showed Hyndman to be the fee-simple owner of the southwest quarter of section 7, free and clear of all liens and encumbrances, except certain taxes, not important here. Thereafter Hyndman and his wife, September 9, 1925, executed and delivered to plaintiff their note in the sum of $1,200 and an amortization mortgage, conveying to plaintiff the southwest quarter of section 7, together with certain irrigation stock with which we are not concerned. This mortgage was filed for record with the clerk and recorder of Alamosa county September 14, 1925. Immediately thereafter, as is customary, plaintiff obtained a supplemental abstract, continuing the original abstract to and including September 15, 1925, and which showed plaintiff's mortgage. Both abstract and supplement thereto were compiled from the records in the office of the clerk and recorder, but neither contained any information concerning, or reference to, the deed of trust to Cecelia H. Burnham. Plaintiff, relying upon the abstract and believing the title to stand in the name of Hyndman, free and clear of all liens and encumbrances, paid and advanced to him and his wife the sum of $1,200. No actual notice or knowledge came to plaintiff of the Cecelia H. Burnham encumbrance until April 18,

1932, when she notified it concerning the same. In the spring of 1934, she instituted an action in the district court of Alamosa county to foreclose her deed of trust, joining plaintiff as defendant. June 11, 1934, the district court rendered judgment in the action, adjudicating that the deed of trust held by Cecelia H. Burnham, erroneously recorded in book 28, page 246, was a first and prior lien upon the southwest quarter of section 7, and further ordered that she have judgment for $1,032.22. The property, of the reasonable value of $1,400, was ordered sold, the proceeds to be applied on the Burnham judgment. At the time of judgment there was due and owing plaintiff on account of the loan to Hyndman the sum of $1,098.52, on which amount was credited the sum of $315, which was the reasonable value of sixty-three shares of stock in the San Luis Valley Canal Company, leaving a balance due as of that date in the sum of $783.52. Plaintiff has no security for the balance due and no means of collecting this amount. Hyndman died prior to June 11, 1934, his estate being insolvent; his wife also is insolvent. In defending the action brought by Cecelia H. Burnham plaintiff expended the sum of $205. After demanding these sums from defendants it brought this suit August 21, 1937.

▆▆ The primary issue requiring our attention concerns the merits of the defenses based upon the statutes of limitation. In considering this issue it becomes necessary to determine when plaintiff's cause of action accrued. The first statute pleaded is section 6, chapter 102, supra, which reads as follows: "All personal actions, on any contract not limited by the foregoing sections, or by any other law, in this state, shall be brought within three years after the accruing of the cause of action, and not afterwards." The trial court did not rule directly on this question. The section applies only to actions on contract. *Bonfils v. Public Utilities Commission,* 67 Colo. 563, 574, 189 Pac. 775. The instant proceeding is an action ex delicto. In *People v. Putnam,* 52

Colo. 517 (122 Pac. 796), we held, in an action against a sheriff and the sureties on his official bond, that the wrong committed by him was the failure to perform an official duty; the bond being only a collateral security or a guaranty for the performance of his official duty. In that case we quoted with approval the following language from *Ryus v. Gruble,* 31 Kan. 767: "The bond does not give the cause of action; the wrongs or delicts do; and the bond simply furnishes security to indemnify the persons who suffer by reason of such wrongs or delicts." Said section 6 has no application ·to the instant action, and therefore the defense based thereon must be held to be without merit.

■ A more difficult question is presented by the defense based upon section 1, chapter 102, supra: Did plaintiff's action accrue six years before it was brought on August 21, 1937? If the answer be in the affirmative, the trial court properly dismissed the action. In support of their contention that the action is not barred by this section, counsel for plaintiff primarily rely upon the case of *People v. Cramer,* 15 Colo. 155, 25 Pac. 302. In the solution of the legal problems in that case we relied strongly upon the case of *Bank v. Waterman,* 26 Conn. 323. Counsel for plaintiff concede that these cases support the minority rule. The majority rule is to the effect that the action accrues when the wrongful act of a public officer is committed. The minority rule, followed in *People v. Cramer,* is, that the statute begins to run at the time of the occurrence of the consequential injury caused by the officer's breach of duty, and not at the time of the breach. In *Bank v. Waterman, supra,* the Supreme Court of Connecticut states this rule as follows:

"Whether the true basis of the injury eventually suffered by the plaintiffs was the neglect to serve the process, or the false return, it cannot be useful to determine, as neither of the facts singly, or both together, in our opinion, would be enough to constitute a cause

of action. No right to sue became lodged in the plaintiffs until a certain consequence resulted from one or both of these breaches of duty by the officer.

"If this be so, that the damnifying consequences of the defendant's violation of duty are an essential ingredient in the plaintiffs' cause of action, the statute of limitations cannot begin to run until this cause of action becomes complete. The consequences are not in such a case, mere aggravating circumstances, enhancing a legal injury already suffered or inflicted; nor are they the mere development of such a previous injury, through which development the party is enabled for the first time to ascertain or appreciate the fact of the injury; but inasmuch as no legal wrong existed before, *they are an indispensable element of the injury itself,* and must therefore themselves fix, or may fix, the period when the statute of limitations shall commence to run. Authorities can hardly strengthen a proposition so manifestly just." (Italics ours.)

It is not necessary for us to here discuss the merits of the majority or minority rule; counsel for defendants do not, because they contend it makes no difference which rule this court adopts; that the consequential injury occurred September 14, 1925, when plaintiff filed its mortgage and became an inferior lienholder. Our problem, therefore, is to determine whether counsel for defendants are correct in this contention. Its solution must be determined by the facts as they were before us in the Cramer case and as they appear in the instant litigation. In the Cramer case the action was against a sheriff and his bondsmen upon his official bond, to recover the amount the plaintiff was required to pay through the negligence of the sheriff in failing to levy a writ of attachment until after liens had been acquired by other creditors of defendant, which then became prior and superior to plaintiff's liens. Since time is the important element in determining when an action accrues, we recite the acts in that case in their

chronological order: June 30, 1886, Tritch commenced his action on a note, and at the same time delivered to the sheriff a writ of attachment, with instructions that he levy upon certain described real estate of defendant which then was wholly unencumbered. The sheriff failed to make the levy. August 3, 1886, thirty-four days after the attachment writ was placed in the hands of the sheriff, other judgments were obtained against the same defendant, and transcripts thereof at once recorded, thereby creating liens prior to that of Tritch's attachment writ. In September, 1886, having obtained his judgment, his writs of execution and attachment were levied upon the real property involved. In December, 1886, Tritch purchased the property at a sale under his execution. February 7, 1887, executions were issued under the other judgments rendered August 3, 1886, and the property was sold to the holders thereof for the amounts of their claims. September 2, 1887, Tritch acquired the certificates of purchase issued to the other judgment creditors. January 7, 1888, he brought his action against the sheriff and his bondsmen, to recover the amount he had paid for these certificates of purchase. The date of the sheriff's wrongful act was in June, 1886, when he failed to make the levy. The time of the neglect of the clerk and recorder in the instant case was August 11, 1924, when he erroneously transcribed the description of the property contained in the Burnham deed of trust. In the Cramer case Tritch's rights first were invaded August 3, 1886, when other creditors obtained first liens on the property on which the sheriff had failed to make the levy under the Tritch writ. In the case at bar plaintiff's rights first were invaded or affected September 14, 1925, when it filed its mortgage for record. This is the act and date that defendants claim bring this case within the minority rule. If that be true, we were wrong in the application of the rule to the facts in the Cramer case and should have sustained the trial court in barring the action. We, how-

ever, reversed the judgment and held that there was no bar. In that case the effect of our decision was that the action accrued some time after January 7, 1887. The last act by Tritch prior to that time was in December, 1886, when he purchased the property when sold under his execution, subject, of course, to the prior liens resulting from the sheriff's negligence. The only act after January 7, 1887, was the sale of the property under the judgments and executions of the other creditors, February 7, 1887, and Tritch's acquisition of their certificates of purchase September 2 of the same year. We do not expressly state in the Cramer case upon which of these two occasions the consequential injury occurred and the action accrued, but our holding was based upon one of these acts which occurred long after Tritch's right was invaded on August 3, 1886. Comparable with this date is September 14, 1925, in the instant case, when plaintiff filed its mortgage for record.

A careful study of the facts here leads us to the inescapable conclusion that the consequential injury to plaintiff was not complete, and therefore this action did not accrue, until June 11, 1934, when the district court of Alamosa county entered judgment foreclosing the Burnham deed of trust, and decreed plaintiff's mortgage to be inferior thereto. We deem it unnecessary to discuss the rationale of the two conflicting rules on the question of when the statute of limitations begins to run against a public officer under the facts disclosed, because both parties claim to be within the rule laid down in the Cramer case. There is a reasonable basis for both rules. However, since we have for a long period adhered to the minority rule, as announced in the Cramer case, we are reluctant to adopt the majority rule without legislative sanction. The trial court's finding, that plaintiff's action was barred by the statutes of limitations, cannot be sustained under the law announced in the Cramer case. The holding therein was subsequently given judicial recognition in *People v. Kendall*, 14 Colo.

App. 175, 59 Pac. 409, and in *State v. McClellan,* 113 Tenn. 616, 85 S.W. 267. The cases cited by counsel for defendants in support of their contention, that the action accrued September 5, 1925, are not in point here.

The only other questions which we think it necessary to determine relate to the allegations in the fifth defense of defendant's answer, which plaintiff urges constitutes no defense: (1) Nonliability by reason of the entries by defendant Ginn in the reception book and indices; (2) that from such books plaintiff had constructive notice of the Burnham deed of trust; (3) plaintiff's failure to examine the records and placing sole reliance on the abstract of title in determining the status of the title. The trial court did not pass upon these questions, but since all the facts are stipulated, we believe we should avoid further unnecessary delay by disposing of them at this time.

There is no mandatory requirement in the statutes relating to receiving-books and indices, that a description of the property conveyed be noted therein. Sections 84 and 85, chapter 45, '35 C.S.A. Their purpose is to furnish a ready and generally convenient means of reference to the matters contained in the books of record. 23 R.C.L., p. 190, § 48; 53 C.J., p. 613, § 15. Correct entries in these books do not excuse a mistake made in transcribing an instrument on the record proper. The abstracter relies entirely upon that record in preparing an abstract. Here, plaintiff, or its attorney, was not required to go to the indices or the record to ascertain the status of the title to the property involved, but could rely solely on an abstract of title furnished by an authorized abstract company. That has been, and is, the customary practice. When he relies upon the abstract he impliedly relies upon the records of the recorder as being correct. The abstracter is his agent in searching the records and preparing a correct abstract therefrom. Unless reliance can be placed on the abstract of an authorized abstract company, a search of the record al-

ways would be necessary, and no further need for abstracts would exist, except as a mere convenience. This would seriously affect the expedition of transactions in real estate and create an unreasonable hazard in the determination of title to such property. When one relies on such an abstract, under circumstances such are present here, he does all that is reasonably necessary for a prudent person to do, to protect him from any mistakes which may be made by the clerk and recorder. Failure of an interested party to search and examine the reception book and indices does not release a clerk and recorder from liability for neglect in failing to correctly transcribe an instrument on the record proper.

Was there constructive notice to plaintiff of the Burnham encumbrance, sufficient to render the clerk and recorder immune from liability for his failure to correctly record the instrument? We think not. There was constructive notice to plaintiff—as a subsequent mortgagee—of the Burnham encumbrance from the time it was filed for record. '35 C.S.A., c. 40, §§36, 114. That would be true regardless of any negligence on the part of the clerk and recorder; but such constructive notice is no defense in the present action. To so hold would lead to the conclusion that, regardless of the recorder's negligence in recording documents, he would not be responsible for any damage resulting from such negligence. This question was before the Supreme Court of Alabama in the case of *Norton v. Kumpe,* 121 Ala. 446, 25 So. 841. We quote from the opinion with approval the following statement: "The mere constructive notice which the registration statutes impute from the filing of a conveyance for record is for the protection of those claiming under the conveyance and does not exist for the protection of the recording officer from liability for non-performance of official duty."

As before stated, plaintiff, under the circumstances before us, in investigating the status of the title to the real estate, was warranted in relying solely upon the

abstract. No further comment is required. The allegations contained in the fifth defense of the answer constitute no defense to the complaint. Other questions are raised, but, in view of our conclusions, we deem it unnecessary to discuss or decide them.

The judgment is reversed, and the case remanded, with directions to ascertain the damage sustained by plaintiff, and to enter judgment accordingly.

MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE YOUNG not participating.