No. 18,385.

BASIL LEO MCKINLEY, ET AL. *v.* R. M. DUNN, ET AL.
(349 P. [2d] 139)

Decided February 1, 1960.   Rehearing denied February 23, 1960.

Mr. RICHARD E. CONOUR, Mrs. ELIZABETH A. CONOUR, Mr. FRANK L. SHAW, for plaintiffs in error.

Messrs. MOSES & DeSOUCHET, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the Mosca Irrigation District or to the Board of Directors thereof as either the district or the directors. We will refer to the plaintiffs in error by name.

In the trial court the directors were the petitioners who sought approval of the district court for the validity of dissolution proceedings instituted by the directors under C.R.S. '53, 149-3-55 to 66.

Without detailing the rather voluminous pleadings, suffice it to say that the directors set forth in their complaint the details of the creation, organization and existence of the district, its assets and indebtedness; that a sufficient number of qualified electors had petitioned for dissolution of the district and that an election was held pursuant to law; that bids were obtained for the purchase of the assets, chiefly the reservoir and water

rights, and that the directors desired authority to complete the sale, redeem the outstanding bonds, pay the indebtedness, together with commissions and the costs of liquidation, and to distribute the balance to the landowners of the district.

Protest and statement of contest was filed by all of the McKinleys as landowners and allegedly qualified electors of the district. By their protest the McKinleys challenged the legality of the petitions for dissolution, of the election, of the power of the directors to sell the reservoir and water rights, and the constitutionality of the entire proceedings.

As was pointed out by the trial court, the sole issue to be determined is: " * * * the validity of the proceedings had and the proposed plan for the dissolution of such district. * * * " The court by its judgment decided all questions adverse to the McKinleys and specifically determined that the proceedings were regular, legal and valid; that the petition for dissolution was signed by a majority of the qualified electors of the district, and that the election was properly called and held, resulting in a majority of affirmative votes for the plan of dissolution. The court further found that only the signatures of qualified electors for purposes of determining the sufficiency of the petition had, in fact, been counted and that those who had attempted to vote and who had been disqualified — including all of the McKinleys with the exception of Leo — were properly rejected. Thus the questions for our determination are:

### FIRST QUESTION

*Was the court correct in determining as a fact, and as a matter of law, that the majority of the signers of the petition as well as those who voted in the election were qualified?*

This question is answered in the affirmative.

The resolution of this issue hinges upon whether all five of the McKinleys, or only Leo McKinley, are to be counted as qualified electors. If the court was correct in

finding that Leo alone was eligible, then it makes no difference whether the challenge to two other alleged unqualified signers of the petition be accepted or rejected. Their exclusion would not change the result of the election.

At the trial, Leo attempted to establish that his wife and three sons should have been counted as landowners and as qualified electors. The testimony shows that all five had had at one time a recorded interest in the acreage involved in the district and were members of a family partnership. However, for purposes of their own, all had conveyed their interest to Leo by warranty deeds dated January 20, 1956, and recorded May 28, 1956. Reconveyance by Leo to the wife and the four sons of parcels of land wholly different from those he had received from them were delivered and recorded May 23, 1957 — more than five months after the election involved and only three weeks prior to the trial of the McKinley protest. These deeds were signed and acknowledged May 18 and 19, 1956. Thus on the day of the election a canvass of the record owners of land in the district would disclose no ownership of the McKinley acreage in anyone other than Leo. The McKinleys contend that under the laws of 1905 defining qualified electors, payment of taxes in the calendar year preceding the election is the only requisite, and that the tax receipts for the year 1955 were exhibited. However, they overlook the fact that two requisites in the statute relied upon are *ownership* on the date of the election plus payment of taxes in the preceding year. Several electors were challenged successfully upon a showing they had not paid their taxes although they were admittedly the record owners. The undelivered and unrecorded deeds were properly held by the court to justify the directors in disqualifying the four McKinleys because of no title in them. The board of directors, having the duty to determine the qualifications of both the signers of the petition and the voters, made their determination as an ad-

ministrative function, and in the absence of a showing that they acted illegally, fraudulently or abused their discretion, their determination is binding on the trial court. 42 Am. Jur. §147, p. 490. The finding of the trial court, also being supported by competent evidence, is binding on this court under the oft repeated rule.

SECOND QUESTION

*Did the directors in following the procedures set forth in C.R.S. '53, 149-3-55 to 66 act under the proper statute?*

This question is answered in the affirmative.

McKinley in his protest contended that because the action of the board involves the sale of the reservoir owned by the district C.R.S. '53, 149-3-23 to 33 governs the procedure.

█ If the procedure to be followed is as contended by McKinley, we would be confronted with a direct conflict between sections 23 to 33 and 55 to 66. Since all were included in the revised statutes and reenacted by the legislature, it is our duty, if at all possible, to construe the sections harmoniously. To do otherwise would amount to judicial repeal of sections 55 to 66 by rendering them meaningless. *Toll v. City and County of Denver,* 139 Colo. 462, 340 P. (2d) 862; *People of the State of Colorado, etc. v. People ex rel. City and County of Denver,* decided January 25, 1960. 141 Colo. 459, 349 P. (2d) 142.

█ Sections 55 to 66 govern procedure when it is sought to dissolve an irrigation district. The sections plainly and repeatedly refer to dissolution and winding up of the affairs of a district by paying the debts and distributing the proceeds among the land owners. Sale of the assets are incidental to dissolution since the directors could not distribute a reservoir or a water right decree.

On the other hand sections 23 to 33 govern the conduct of directors who seek to sell assets of the district as might be done from time to time without dissolving the district and destroying its entity or organizational

machinery. Thus under the facts here where a majority of the property owners sought by petition to voluntarily dissolve the district the only initiative procedure prescribed is to be found in sections 55 to 66.

A constitutional question raised by the McKinleys is that the statute deprives non-resident landowners of the district of a voice in the proceedings. The McKinleys are not in the class of owners so affected, and no member of said class has protested or sought to intervene in the suit. We follow the generally accepted rule that constitutionality is to be considered only in the light of the standing of the party who seeks to raise the question and that a person may challenge the constitutionality of a statute only when and as far as it is being or is about to be applied to his disadvantage. *Cross v. Bilett,* 122 Colo. 278, 221 P. (2d) 923.

The judgment is affirmed.

Mr. Justice Knauss and Mr. Justice Hall concur.