**CITY OF LAKEWOOD, a Municipal Corporation of the State of Colorado, Petitioner,**

v.

**William MAVROMATIS, sometimes known as Billy Wilson; and United Bank of Denver, as Trustee for the Estate of Joel Barron, Respondents.**

**No. 90SC67.**

Supreme Court of Colorado, En Banc.

Sept. 16, 1991.

Rehearing Denied Oct. 7, 1991.

Gorsuch, Kirgis, Campbell, Walker and Grover, Malcolm M. Murray, Jolene Ver Steeg, Denver, for petitioner.

Notarianni & Notarianni, Aldo G. Notarianni, Denver, for respondents.

Larry E. Lawler, Lakewood, for respondent William Mavromatis.

Veto & Scott, Diane S. Freed, Lakewood, for respondent United Bank of Denver, as Trustee for Estate of Joel Barron.

Don K. Deford, Garfield County Atty., Glenwood Springs, Marion A. Brewer, Gen. Counsel Colorado Counties, Inc., Denver, for amicus curiae Colorado Counties, Inc.

Geoffrey T. Wilson, Gen. Counsel Colorado Mun. League, Denver, for amicus curiae Colorado Mun. League.

Carpenter & Klatskin, P.C., Willis Carpenter, Denver, for amicus curiae Land Title Ass'n of Colorado.

Justice LOHR delivered the Opinion of the Court.

This case involves a dispute between the City of Lakewood ("City") and the respondents, William Mavromatis, a.k.a. Billy Wilson, and the United Bank of Denver as trustee for the estate of Joel Barron (collectively, "landowners")[1] over title to a thirty-foot strip of land along the north side of West Alameda Avenue near Wadsworth Boulevard (the "Tally Ho strip").[2] The City's claim to the Tally Ho strip is based on a "road petition" pursuant to which the strip was statutorily dedicated as a public highway long before the landowners received a deed to the disputed property. The Jefferson County District Court granted summary judgment for the landowners on the issue of ownership, holding that the landowners acquired the strip in good faith and for value without actual knowledge or constructive notice of the document upon which the City based its claim and therefore were entitled to the protection of Colorado's recording act.[3] The Colorado Court of Appeals affirmed. *City of Lakewood v. Mavromatis*, 786 P.2d 493 (Colo.App.1989). We granted certiorari to determine whether the manner in which the road petition was deposited and maintained in the county records placed subsequent purchasers on constructive notice of that instrument. We conclude that road petitions are subject to Colorado's recording act, that the road petition at issue was not recorded in the county records within the meaning of that act, and that subsequent purchasers were not placed on constructive notice of the contents of the road petition. We therefore affirm the judgment of the Colorado Court of Appeals.

1. See note 5 at p. 6, below.

2. The property takes its name "Tally Ho strip" from that of a nearby commercial enterprise.

3. In this opinion we commonly refer to Colorado's recording act in the singular, although it has undergone a series of changes with the passage of time. When referring to the version in effect at a particular time, we often use the term "applicable recording act" or some equivalent designation.

## I.

In 1888, owners of lands including the Tally Ho strip executed a road petition requesting establishment of a public highway through lands that included the Tally Ho strip and giving a right-of-way through such lands to Jefferson County, pursuant to a statutory dedication procedure set forth in § 2972, G.S. (1883). A plat of the proposed road accompanied and was made part of the petition. The board of county commissioners declared the road to be a public highway by endorsement on the petition.

The county clerk placed the petition in a "road book" kept for the specific purpose of maintaining plats showing the location of lands acquired for public highways, and endorsed on the road petition that it was "[f]iled in the office of the County Clerk April 2d, 1888." It was not filed or recorded elsewhere in records maintained in the office of the county clerk and recorder. It was not entered in the reception book or assigned a reception number and was not entered in the grantor and grantee indices.[4] Although the road petition contains a printed sentence that contemplates entry of the date the petition was filed for record, followed by a blank for the signature of the recorder, this portion of the form was not completed.[5] At the time of the commencement of the present proceedings, the road book was maintained in a vault in the basement of the Jefferson County Courthouse and its contents were available to the public on microfilm. The record does not establish where the road book was kept in earlier times. Microfilm was not an available technology when the petition was first received by the county clerk. The City has succeeded to the interests of Jefferson County under the road petition by a series of instruments that we need not detail.

West Alameda Avenue was built at least as early as 1901 across a thirty-foot wide strip of land lying south of and adjoining the Tally Ho strip. The land on which the roadway was built was included in the road petition by which a public highway was created through the Tally Ho strip. This roadway, however, did not occupy any part of the Tally Ho strip before the landowners acquired that property.

The landowners[6] purchased property that included the Tally Ho strip in 1972. In 1986, as part of a plan to widen West Alameda Avenue, the City filed a "Petition in Condemnation" pursuant to section 38-1-105(5), 16A C.R.S. (1982), in Jefferson County District Court seeking a determination of interests in the Tally Ho strip[7] and condemnation of any interests held by the landowners, who were named as defendants.[8] The City took the position that it was the owner[9] of the strip but sought to perfect its title by adjudication or condemnation against claims asserted by the defendants.

The landowners defended on the basis that they acquired title as subsequent *bona fide* purchasers without notice of the road petition or the claim of the City or its predecessors. They therefore asserted

---

4. *See* discussion at pp. 94–95 for a description of the statutory procedures for assigning reception numbers and indexing documents as part of the recording process.

5. The described portion of the form provides: Filed for record the __ day of __ A.D. 188, at __ o'clock __ M.

_____ Recorder,
By_____ Deputy.

6. The purchasers were William Mavromatis and Joel Barron. The term "landowners" includes Joel Barron when referring to times preceding his death and to the United Bank of Denver as trustee for the estate of Joel Barron thereafter.

7. The land in question was described in the petition as the "South 30 feet of the Southwest ¼ of Section 11, Township 4 South, Range 69 West, of the Sixth P.M. in Jefferson County, Colorado."

8. Other defendants were also named. The City's claims against those defendants have been resolved and are not pertinent to the dispute now before us.

9. The statute pursuant to which the public highway rights in the Tally Ho strip were created speaks of a "right of way through the lands." § 2972, G.S. (1883). It is not necessary for resolution of the issues involved in this opinion to determine the extent of the legal rights transferred by a petition under § 2972, and we express no opinion on that question.

that they took title free from any rights asserted by the City by reason of the protective provisions of Colorado's recording act in effect at the time of execution of the road petition. *See* § 215, G.S. (1883).[10] The parties filed cross-motions for summary judgment on the issue of ownership of the Tally Ho strip.

The district court found as undisputed facts that the landowners purchased the Tally Ho strip in 1972 in good faith, for value, and without actual notice of a claim by the City or its predecessors in interest. The court held that placing the road petition in the road book did not constitute recording of the document within the meaning of the applicable Colorado recording act, § 215, G.S. (1883). As a result, the court held, the landowners were not put on constructive notice of the road petition by reason of its appearance in the road book. Under the provisions of the 1883 recording act, therefore, the landowners acquired the Tally Ho strip free from any claim by the City.[11] Thereafter, the district court conducted condemnation proceedings and entered final judgment condemning the Tally Ho strip and awarding the landowners just compensation. The City appealed on the issue of ownership, and the Colorado Court of Appeals affirmed. *City of Lakewood v. Mavromatis*, 786 P.2d 493.

On certiorari review, the City does not contend that the landowners had actual knowledge of the road petition at the time they acquired the Tally Ho strip. The issue before us is whether the landowners had constructive notice of the City's claim at that time. The City bases its constructive notice argument on three grounds. First, it argues that based on the rationale of *South Creek Assoc. v. Bixby & Assoc., Inc.*, 781 P.2d 1027 (Colo.1989), it was not necessary to record the road petition pursuant to the recording act in order to give constructive notice of the creation of a public highway under the statutory dedication procedure. Alternatively, the City

contends that the recording requirements in the statute pursuant to which the road petition was executed and accepted supplant the requirements of the recording act and that recording in the road book pursuant to the then-applicable road petition statutes was effective to give constructive notice to third persons. Finally, the City contends that delivery of the road petition to the clerk and recorder was adequate to comply with the recording act notwithstanding that the road petition was not entered in the reception book or the grantor and grantee indices. We are not persuaded by any of the City's arguments.

## II.

We consider first the City's argument that the statute providing for creation of public highways by road petition contains its own requirements for recording and that compliance with that statute obviates the necessity to follow recording act procedures in order to give constructive notice of the road petition to subsequent purchasers. We conclude that public highways can be created under the road petition procedure without compliance with the recording act but that such compliance is required to give constructive notice of public highway rights to third persons. We next consider the City's contention that the requirements of the recording act were satisfied. We hold that delivery of the road petition to the county clerk for entry in the road book did not in itself constitute compliance with the applicable recording act in absence of adherence to the requisite procedures, including indexing the instrument in the grantor and grantee indices. In reaching these conclusions we first review the policies of the recording acts and the procedures adopted to implement them, then consider the relevant statutes providing for creation of public highways by petition and the provisions of the applicable recording act, and finally construe the pertinent acts

---

10. The district court held that the recording act in effect at the time of execution of the road petition was the applicable statute. The parties do not contest this holding, and we accept it for the purpose of this opinion.

11. The recording act, § 215, G.S. (1883), is set forth on page 96 of this opinion.

together to resolve the issues presented by this case.

## A.

Recording acts have been adopted for purposes including the protection of subsequent purchasers of real property against the risk of prior secret and unknown instruments affecting title to that property. *Grynberg v. City of Northglenn,* 739 P.2d 230, 238 (Colo.1987); *Page v. Fees–Krey, Inc.,* 617 P.2d 1188, 1192–93 and n. 7 (Colo. 1980); *Carmack v. Place,* 188 Colo. 303, 306, 535 P.2d 197, 199 (1975). "Very generally, they permit a purchaser to rely on the condition of title as it appears of record." *Page,* 617 P.2d at 1193; *accord Grynberg,* 739 P.2d at 238; *Hallett v. Alexander,* 50 Colo. 37, 43, 114 P.· 490, 493 (1911); *see McMurtrie v. Riddell,* 9 Colo. 497, 501, 13 P. 181, 183 (1887) (the "plain meaning and intent [of the recording act] is that no prior unrecorded conveyance or contract, affecting the title to land, shall take effect as to any subsequent *bona fide* purchaser without notice . . . ."). Recording acts also serve the important purpose of creating an accessible history of title. *Page,* 617 P.2d at 1193 and n. 7; 1 Patton on Land Titles § 6 at p. 15 (1957).

Colorado has had a recording act ever since the first territorial legislature met in 1861. *See* Act of November 5, Colo.Territorial Laws, sec. 9, p. 65 (1st Sess.1861). Although the recording act has evolved over the years, it has retained its essential feature of providing protection for certain classes of persons acquiring certain types of interests in real property against prior unrecorded instruments of which they had no actual knowledge or notice. *See, e.g.,* Act of November 5, Colo.Territorial Laws, sec. 9, p. 65 (1st Sess.1861) (protecting "a subsequent purchaser for a valuable consideration, and without notice" and "a subsequent encumbrancer by mortgage or judgment" against an unrecorded "conveyance of real estate, or of any interest therein"); § 215, G.S. (1883) (protecting "subsequent *bona fide* purchasers and encumbrancers by mortgage, judgment or otherwise" against unrecorded "deeds, convey-ances, agreements in writing of, or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate"); § 38–35–109(1), 16A C.R.S. (1990 Supp.) (protecting "any class of persons with any kind of rights who first records" against unrecorded "deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record" of which the protected person has no notice).

In order to implement the purposes of the recording act to give notice to subsequent purchasers and to provide an accessible history of title, it was necessary to provide for a permanent record of a document submitted for recording and to create a system whereby that record could be discovered by someone interested in tracing the title to the property in question. At the time relevant to this case, the statutes established the office of county clerk and assigned to that official duties as clerk of the board of county commissioners. § 554, G.S. (1883). The county clerk was also designated as *"ex officio recorder"* and required to "record or cause to be recorded in print or in a plain and distinct handwriting, in suitable books, to be provided and kept in his office, all deeds, mortgages, maps, instruments and writings, authorized by law to be recorded in his office, and left with him for that purpose . . . ." § 578, G.S. (1883). In order to enable an instrument to be located, the recorder was required to maintain a grantor index and a grantee index, listing the recorded instruments and the volume and page where recorded, and to organize the indices alphabetically by the names of the grantors and grantees respectively. § 579, G.S. (1883). Additionally, the recorder was required to enter each recorded instrument in a reception book, listing the time of reception and the person to whom the instrument was delivered after recording. § 580, G.S. (1883). Finally, the recorder was required to keep an index of each volume of record, listing on one page the grantors' names in alphabetical order and on another the

grantees' names in like order. § 582, G.S. (1883).

By use of the grantor and grantee indices, it is possible to trace and construct the entire chain of title to a parcel of real property. *See generally* G. Nelson & D. Whitman, *Real Estate Transfer, Finance, and Development* 212–222 (3rd ed. 1987) (hereafter, "Nelson & Whitman"), describing the process in some detail. Thus, the grantor and grantee indices are important components of the system for recording instruments affecting title to real property. *See Treat v. McDonough,* 148 Colo. 603, 609, 367 P.2d 587, 590 (1961) ("[I]ndices are as much a part of the public records as the records themselves for without them public record offices would be a senseless mass of documents, books and papers without the means of identification or classification.").[12]

## B.

Chapter XCV of the General Statutes of 1883 is entitled "Roads and Highways" and contains detailed provisions for the creation of public highways at the instance of private persons. The first and simplest method, and the one involved in the present case ("statutory dedication method"), required a petition to the board of county commissioners by all owners of land through which the proposed road was to be laid out, accompanied by a plat of the road. § 2972, G.S. (1883). The board of county commissioners was then required to determine whether the public good required the road and, if so, to declare it to be a public highway. *Id.*[13] The statute provided that upon completion of these procedures, "the plat shall be filed and recorded and the said road shall be-

come a public highway from and after that date." The statute did not prescribe the manner of filing and recording.[14]

The second method by which the statute authorized public highways to be created was more complex but need only be briefly outlined for present purposes. This method ("condemnation method") required a petition by ten freeholders residing within two miles of the proposed road, the posting of notices along the proposed route, and the appointment of viewers to mark out the road, assess damages and benefits, arrange for a survey and plat, recommend appropriate action to the board of county commissioners, and file a detailed report in the office of the county clerk and recorder. §§ 2956, 2959–2964, G.S. (1883). The board of county commissioners was then required to hear objections to the report, § 2965, G.S. (1883), determine whether the road was to be established and opened for travel, *id.,* and pay damages, §§ 2967–2969, G.S. (1883). Persons having interests in the affected land could request that compensation be determined by a jury, in which event a condemnation proceeding would be conducted. § 2970, G.S. (1883). Most pertinent to the present controversy, the statute provided that if the board of county commissioners should determine to open the road, "they shall cause the full and final report of the viewers, including the plat and report of the surveyor, to be recorded in the office of the county clerk and recorder in a book kept for that purpose." § 2966, G.S. (1883).

At the time the road petition at issue here was executed and placed in the road book, Colorado's recording act provided as follows:

---

**12.** We are aware, as noted in Nelson & Whitman's text, that most title searches in modern times are conducted through privately maintained tract indices. *See* Nelson & Whitman at 212, 222. The fact remains, however, that grantor and grantee indices provide the conceptual foundation for Colorado's recording act.

**13.** The statutory dedication method was repealed by ch. 202, sec. 46, 1953 Colo.Sess.Laws 531.

**14.** In full, section 2972 provided:
Whenever a petition shall be presented to (to) the board of county commissioners of any coun-

ty of this State praying for a public highway, and the names of all the owners of all the land through which said road is to be laid out, shall be signed by the owners thereof to said petition, giving the right of way through the lands, and accompanied by a plat of the road, it shall be the duty of the board of county commissioners, if in their opinion the public good requires it, to declare the same a public highway, and thereupon the plat shall be filed and recorded and the said road shall become a public highway from and after that date.

All deeds, conveyances, agreements in writing of, or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office and not before, such deeds, bonds and agreements in writing shall take effect as to subsequent *bona fide* purchasers and encumbrancers by mortgage, judgment or otherwise not having notice thereof.

§ 215, G.S. (1883). We have held that this statute protected subsequent purchasers of real estate without notice of prior claims by persons who failed to record instruments on which their claims were based. *Bradbury v. Davis*, 5 Colo. 265, 269 (1880).[15]

### C.

■ Our task is to construe the foregoing statutes to determine whether placing the road petition in the road book was adequate to complete the creation of public highway rights under section 2972, G.S. (1883),[16] and if so, whether it was also sufficient to give constructive notice of the road petition to subsequent purchasers. We conclude that section 2972 was intended to require the recording of the road petition in compliance with recording act procedures, including entry in the reception book and grantor and grantee indices. We further conclude that placing the road petition in the road book completed a process effecting substantial compliance with the statute for the purpose of *creation* of a public highway, but absent adherence to the recording act procedures, the road petition did not *give constructive notice* to subsequent purchasers. Subsequent purchasers without actual notice of road petitions appearing in the road book, therefore, are entitled to the protections of the recording act.

■ In resolving these issues, we are guided by the well established principle that our primary goal in determining the meaning of a statute is to ascertain and give effect to the intent of the legislature. *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1111 (Colo.1990); *Kane v. Town of Estes Park*, 786 P.2d 412, 415 (Colo. 1990). If possible, we will determine that intent from the plain language of the statute, *Danielson*, 791 P.2d at 1111; *Kane*, 786 P.2d at 415, construing it as a whole and giving effect to all its parts, *City of Ouray v. Olin*, 761 P.2d 784, 788 (Colo. 1988). When two statutes address the same subject we will attempt to construe them harmoniously. *Cugnini v. Reynolds Cattle Co.*, 687 P.2d 962, 965 (Colo.1984); *McKinley v. Dunn*, 141 Colo. 487, 491, 349 P.2d 139, 141 (1960).

The recording requirements for creation of public highways under the statutory dedication method and under the condemnation method in effect in 1888 are not identically phrased. Whereas the statutory dedication method under which the rights at issue were created simply provided that "the plat shall be filed and recorded," § 2972, the statutory requirement under the condemnation method was that the relevant documents "be recorded in the office of the county clerk and recorder in a book kept for that purpose," § 2966.

The origin and modifications of the recording provisions in the statutes for creation of public highways provide relevant background for our inquiry into the meaning and purpose of the foregoing provisions. The statutory predecessor of the condemnation method for establishing public roads was enacted in 1862, Act of August 15, 1862, Colo.Territorial Laws, pp. 94–95 (2d Sess.1862), and was first amended in 1864, Act of March 11, Colo.Territorial Laws, sec. 12, p. 129 (3rd Sess.1864).

---

**15.** The statutory dedication method effects a transfer of rights in real property, much the same as does a "deed" or "conveyance." The City does not contend that an instrument effecting such a transfer would not be subject to the recording act if not prepared and executed pursuant to the statutes pertaining to public highways.

**16.** The landowners take the threshold position that absent compliance with the recording act, the purported statutory dedication was not effective even between the parties.

These enactments contained no provisions for recording any instruments reflecting the establishment of public highways. In 1877, the statutory dedication method was first established. § 2390, G.L. (1877). That statute is identical in all relevant respects to the statutory dedication statute at issue in the present case, § 2972, G.S. (1883), including the requirement that the plat be "filed and recorded." The 1877 legislation also introduced a requirement that under the condemnation method the viewers' report, including the plat of the road, be "put upon record in [the board of county commissioners'] respective counties in the office of the recorder of deeds for such county." § 2384, G.L. (1877). The final legislative change relevant to this dispute occurred in 1883, when the recording requirement for the condemnation method was changed to require "the full and final report of the viewers, including the plat and report of the surveyor, to be recorded in the office of the county clerk and recorder in a book kept for that purpose." § 2966, G.S. (1883).

We first consider whether placing the road petition in the road book was sufficient to complete the steps necessary to create public highway rights. We then address the issue of whether such action was sufficient to give constructive notice to subsequent purchasers. The leading case of *Weld County v. Ingram*, 31 Colo. 319, 73 P. 37 (1903), is central to resolution of both those issues. We therefore describe the relevant facts and holdings in *Ingram* at the outset as a preface to further discussion and resolution of the public highway creation and constructive notice issues.

*Ingram* involved the creation of a public highway by the condemnation method under the statute in effect in 1879 requiring the plat and other relevant instruments to be put upon record in the office of the recorder of deeds. *Ingram*, 31 Colo. at 321, 73 P. at 37. The county commissioners ordered the road established and entered the order on their own records but failed to accomplish the required recording with the recorder of deeds. *Id.* A subsequent purchaser sought to prove title unencumbered by the public highway. *Ingram*, 31 Colo. at 320, 73 P. at 37. We held that "[t]he evident purpose of the statute is to give notice of the establishment of the road" but that it did not follow that recording with the recorder of deeds was necessary to establishment of the public highway. *Ingram*, 31 Colo. at 322, 73 P. at 37. Rather, "[p]ersons having actual notice of the establishment are ... bound, but subsequent purchasers of land are not bound, by the proceedings before the board for the establishment of a public highway without actual or constructive notice thereof." *Id.* We held that evidence supported the claim of the subsequent purchaser that she took without notice, and upheld the district court's decree quieting title in her and against the county. *Ingram*, 31 Colo. at 323, 73 P. at 38.

Although the recording requirement of the 1883 statutory dedication statute differs from that at issue in *Ingram*,[17] we find *Ingram* persuasive that the intent of these early statutes was not to make recording an essential step in creation of a public highway but was to give notice to subsequent purchasers. Other cases as well support the proposition that failure of strict compliance with the requirements of road dedication statutes did not defeat the *creation* of a public highway where the essential purposes of the statutes were accomplished by actions reflecting grants by the property owners and acceptance by the county. *Boulder County v. Brierly*, 39 Colo. 99, 102, 88 P. 859, 860 (1907) (acts of board of county commissioners evidencing determination that road should be established were adequate to complete the dedication notwithstanding absence of specific determination contemplated by statute); *Raftopoulos v. Farrow*, 691 P.2d 1160, 1161 (Colo.App.1984) (substantial compliance with condemnation method provisions

---

17. As previously noted, the condemnation method statute applicable at the time relevant to *Ingram* provided that the pertinent documents be put upon record in the office of the recorder of deeds, whereas the 1883 statutory dedication method legislation required that they be filed and recorded.

for establishing public road, and placing relevant documents of public record, insulated dedication from collateral attack more than seventy years later). *Cf. Board of County Comm'rs v. Warneke,* 85 Colo. 388, 394, 276 P. 671, 673 (1929) (incomplete or defective statutory dedications will often be upheld as common law dedications).[18] Indeed, we have implicitly recognized that placing pertinent dedication documents in a road book was adequate to create a public highway under the statutory dedication method. *Crane v. Beck,* 133 Colo. 325, 295 P.2d 222 (1956); *Korf v. Itten,* 64 Colo. 3, 169 P. 148 (1917).[19] Accordingly, we hold that placing the road petition and incorporated plat in the road book in the office of the Jefferson County Clerk in the present case was adequate to complete the dedication of the Tally Ho strip as a public highway.[20]

We must then determine the action necessary in order to give notice of the dedication to subsequent purchasers. Each of the early statutes providing for the creation of a public highway by the statutory method or the condemnation method used the word "recorded" or "put upon record." The condemnation method statutes have specifically provided that the recording is to be in the office of "the recorder of deeds" or "the county clerk and recorder." At the time of the enactment of the first of the statutes providing for creation of public highways and under consideration here, Colorado had a recording act and the official designated to accomplish the recording of documents affecting interests in real estate was denominated a "recorder." The terminology in the statutes for creation of

public roads, therefore, strongly indicates that the legislature intended that road petitions as well as documents for creation of public roads under the condemnation method be recorded in accordance with the provisions of the recording act.

*Ingram* lends important support to this construction of the public highway statutes. Section 2972, G.S. (1883), required that the plat be "filed and recorded." *Ingram* established that the purpose of this provision was to give notice to subsequent purchasers. In order to effectuate this purpose, the legislature must have intended filing and recording pursuant to the recording act. That act was specifically devised to provide a means of giving such notice. Although placing the plat in the road book adequately served to make it part of the public records, the recording act required the entry of all instruments in the grantor and grantee indices so that they would be accessible to and discoverable by anyone seeking to ascertain the status of title of particular property. In contrast, the statutes providing for creation of public highways contain no provisions embellishing on the requirement that relevant instruments be recorded. To place the plat in a road book without assigning it a reception number or indexing it in the grantor and grantee indices would simply make it part of a "senseless mass of documents, books and papers without the means of identification or classification." *See Treat,* 148 Colo. at 609, 367 P.2d at 590. Such a construction would defeat the legislative purpose of requiring recording as a means of giving notice. *See State v. Anderson,* 241 Ind. 184, 170 N.E.2d 812, 815 (1960) (statute

---

18. At common law a dedication of land as a public highway required acceptance of the dedication by the public. *Warneke,* 85 Colo. at 394–96, 276 P. at 674. Compliance with statutory procedures, including necessary determinations by a board of county commissioners that the public good requires the highway, serves the purpose of the acceptance requirement.

19. Although it is not clear from the official reports of *Crane* and *Korf,* and was not posed as a specific issue in those cases, the City presented evidence in the present case that the plats in question were placed in road books and not indexed in grantor and grantee indices.

20. In arriving at this conclusion, we have not overlooked the language of § 2972 that "the plat shall be filed and recorded and the said road shall become a public highway *from and after that date.*" (Emphasis added.) We conclude that cases recognizing creation of public highways when the essential purposes of the dedication statutes have been satisfied adequately establish that recording act compliance is not critical to creation of a public highway notwithstanding that statutory language. *Crane* and *Korf* were both decided under that same statute.

requiring highway easements to be filed in offices of state highway commission was merely for purpose of establishing a procedure by which state selects and establishes routes for new highways; compliance with recording act was necessary to give notice to subsequent purchasers). We therefore hold that although a public highway could be created under the statutory dedication method of section 2972, G.S. (1883), by a procedure completed by placing the plat in the road book, recording pursuant to the recording act was both contemplated by section 2972 and necessary to give notice to subsequent purchasers.[21] We believe this interpretation properly construes the statutory provisions together, gives consistent and harmonious effect to the whole, and satisfies the constructive notice objective of the legislative enactments.

In reaching this result we are aware that the district court was presented with evidence suggesting that some county clerks and recorders in early times did not assign reception numbers to road dedication instruments and did not enter them in the grantor and grantee indices, a practice that seems to have been followed in Jefferson County in the early days. Although administrative construction of a statute is often persuasive in construing legislation, *see* § 2–4–203(1)(f), 1B C.R.S. (1980) (administrative construction may be considered in construing ambiguous statute); *Davis v. Conour*, 178 Colo. 376, 382, 497 P.2d 1015, 1018 (1972) ("in interpreting a statute one should look to the contemporaneous construction of the Act by public officials charged with its administration"), we do not find the practice compelling as a guide to statutory interpretation here. There is no evidence that clerks and recorders were asked to process road dedication instruments under the recording act provisions and declined to do so. Because the legislative purpose of recording was to provide notice to subsequent purchasers, *see Ingram*, and because simply filing the instruments in the road book without following other recording act procedures was insufficient to accomplish that purpose, we cannot conclude that such filing by itself satisfied the recording requirements of the statutes providing for creation of public roads.[22]

Nor can we accept the City's argument that the road petition was "recorded in the office of the recorder" in compliance with the recording act, § 215, G.S. (1883), when it was "[f]iled in the office of the County Clerk," as evidenced by the certificate of that official, and placed in the road book. The presence of an additional certificate form on the road petition to be executed by the recorder and intended to reflect that the instrument was "[f]iled for record" severely undercuts the persuasiveness of the City's argument. In the present case, the recorder did not execute this certificate and did not assign the road plat a reception number or reflect it in the grantor and grantee indices, as would have been the case had the instrument been recorded in the real property records.[23] Most impor-

---

**21.** Similarly, under the condemnation method of creating a public highway, we believe the legislative change in 1883 to require recording in the office of the county clerk and recorder in a book to be kept for that purpose was not to alter the requirement of the predecessor statute that the instruments be recorded with the recorder of deeds but simply to prescribe that all such instruments be physically placed by the recorder in a special book relating to creation of public highways in addition to being recorded with the recorder of deeds under recording act procedures. Placing the road petitions in that same book was an acceptable administrative practice.

**22.** It is probable that in many instances roads have been constructed on strips dedicated as public highways under the statutory dedication method or the condemnation method. Such

construction would place a subsequent purchaser on actual or inquiry notice of the existence of rights to construct and maintain a highway even if the dedication instruments were not recorded. *See Ingram*, 31 Colo. at 322, 73 P. at 37; *see also Monaghan Farms, Inc. v. City & County of Denver*, 807 P.2d 9, 15 (Colo.1991) ("Inquiry notice requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further.").

**23.** Contrast the facts in the present case with those in *People v. Ginn*, 106 Colo. 417, 106 P.2d 479 (1940), in which a mortgage was held to give constructive notice even though improperly indexed when it had been presented to the recorder to be recorded in the real property records and the mis-indexing was caused by the recorder's error.

tantly, the failure to index the road petition in the grantor and grantee indices defeated an essential purpose of the recording act to make a recorded instrument part of a body of records accessible to the public through a search of the grantor and grantee indices.

### III.

The City contends that road petitions need not be recorded in order to give constructive notice of the creation of a public highway because the procedures by which those petitions are executed and accepted satisfy the purposes of the recording act. To support this argument the City relies on *South Creek Assoc. v. Bixby & Assoc., Inc.*, 781 P.2d 1027 (Colo.1989). This reliance is misplaced.

In *South Creek* we considered a provision in a Planned Unit Development (PUD) plan providing that a parking area within a shopping center area of the PUD be subject to mutual use by a private school and a shopping center, both of which were within the PUD. 781 P.2d at 1028. The PUD plan was approved under procedures prescribed by an enabling ordinance of the City of Boulder, but was not recorded. *Id.* The shopping center was later conveyed to a purchaser which asserted it had no actual knowledge of the PUD plan's shared parking provisions and that because the PUD plan was not recorded the purchaser had no constructive notice of the requirement that the parking area be shared with the school. *South Creek*, 781 P.2d at 1028–29. The shopping center owner asserted that by reason of the recording act it was not bound by the unrecorded PUD provision. We rejected this contention, and concluded that "Colorado's recording act does not apply to the parking provisions of the PUD plan because the plan constitutes a form of rezoning for the area within the PUD and was validly adopted pursuant to Boulder's PUD ordinance, which in turn was validly

enacted in exercise of Boulder's police power." *Id.* 781 P.2d at 1031.

The use restrictions contained in such a plan adopted and approved pursuant to such an ordinance are not imposed principally for private benefit but to advance governmental objectives. Thus, in *South Creek* we recognized that the purpose of the PUD enabling ordinance was to ensure that "the public interest in pedestrian safety, traffic control and uncongested streets will be satisfied by requiring a PUD applicant to provide adequate parking facilities for the use of the improvements comprising the PUD." *Id.* at 1032. The PUD plan at issue furthered that interest by imposing "specific requirements to provide adequate parking for the school that is part of the approved PUD." *Id.* at 1033. Boulder's PUD ordinance authorized the city as well as interested private parties to take action to remedy violations of the PUD provisions. *Id.*

We held in *South Creek* that governmentally imposed use restrictions contained in zoning and rezoning ordinances, and in PUDs approved pursuant to an enabling ordinance, are not subject to the recording act and therefore need not be recorded to be enforceable against subsequent purchasers without actual knowledge. 781 P.2d at 1034. This is consistent with the generally recognized principle that zoning is not an aspect of title and therefore is not subject to the provisions of recording acts. *See, e.g., Mitchell v. Chernecki*, 286 Or. 285, 593 P.2d 1163, 1165–66 (1979) (purchaser is charged with notice of zoning and may not assert mistake in entering contract for sale of land based on lack of knowledge of zoning); Nelson & Whitman at 203 (zoning is not technically an aspect of title). *South Creek*, 781 P.2d at 1032.[24]

The City points to our statements in *South Creek* "that a recording of the PUD plan provisions under the recording act is not required because the notice goals of the recording act are satisfied by the PUD

---

**24.** In their brief, the landowners "concede the well established principle that all property owners are charged with knowledge of the provi-

sions of statutes and ordinances of a governmental body having dominion over their property ...."

approval process." 781 P.2d at 1033. This was simply a recognition that zoning and rezoning, including PUD approval, are processes that are open to public scrutiny and the products of which are available in public records. Because zoning has traditionally not been regarded as an aspect of title, ordinances imposing or modifying zoning restrictions have not been considered within the ambit of the recording act. The fact that it is traditionally understood that zoning restrictions must be researched independent of an investigation of the deed records, *in addition to* the public nature of zoning and rezoning, provides assurance that the policies of the recording act to protect against secret conveyances and to provide an accessible title history are not contravened by a rule that excludes zoning provisions from the reach of that act.

The interests created by a road petition are not simply use restrictions but are interests in real property transferred from landowners to a county. Absent the opening of a road across the land in question or some other activity suggesting the existence of third party rights, there is no reason that a subsequent purchaser would suspect the existence of such rights unless the road petition appeared in the real property records. This contrasts with zoning provisions, for a subsequent purchaser must always be aware of the likelihood that property has been zoned and traditionally has looked not to the real property records but to the records of the governmental zoning authority to ascertain the current status of zoning. For the foregoing reasons we decline to extend the holding of *South Creek* to transfer of interests in real property pursuant to road petitions.

We affirm the judgment of the Colorado Court of Appeals.