**CITY AND COUNTY OF DENVER, a municipal corporation of the State of Colorado, Plaintiff–Appellee,**

v.

**EAT OUT, INC., d/b/a Ilios Restaurant, a Colorado corporation, Defendant–Appellant.**

No. 02CA0159.

Colorado Court of Appeals, Div. III.

Feb. 27, 2003.

Certiorari Denied Sept. 8, 2003.

J. Wallace Wortham, Jr., City Attorney, Kerry A. Buckey, Assistant City Attorney, Thomas Bigler, Assistant City Attorney, Denver, Colorado, for Plaintiff–Appellee.

Appel & Lucas, P.C., Garry R. Appel, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

In this forcible entry and detainer (FED) action, defendant, Eat Out, Inc. (tenant), appeals the trial court's order granting possession to the City and County of Denver and resolving related matters. We dismiss part of the appeal and otherwise affirm.

In June 1997, tenant leased certain real property from the owner (landlord) with primary and renewal terms of ten years each. Landlord constructed a building on the property to tenant's specifications for use as a restaurant, and tenant installed leasehold improvements. The lease contained a condemnation clause that provided that the lease terminated in the event of condemnation of the property or sale under threat of condemnation.

In 1999, the Denver Art Museum, which is owned by the city and located nearby, announced a proposed expansion involving construction of additional museum space and a related parking garage on the city block occupied in part by tenant. In designing the new structures, the city decided it needed to acquire the property and authorized the acquisition of the property by negotiation or condemnation.

The city negotiated with landlord, who ultimately accepted the city's proposal and entered into a contract to sell under threat of condemnation. Landlord then terminated the lease. Following acquisition, the city gave tenant sixty days to vacate the property.

Tenant refused to vacate and filed an action seeking damages against landlord and the city under a number of theories. The city then filed this FED action, and the two cases were consolidated.

After a hearing on the city's FED action, the trial court granted the city possession of the property and also ruled on some collateral issues relating to tenant's damages action. Tenant then filed a motion to stay the order and set bond, which was denied by the trial court. At tenant's request, its damages action was stayed pending the outcome of this appeal. Tenant vacated the premises, and the city subsequently demolished the structure.

I.

We initially agree with the city's assertion that the issue of possession is moot.

The central issue in determining mootness is whether a change in the circumstances that prevailed at the beginning of litigation has forestalled the prospect for meaningful relief. *Zoning Board of Adjustment v. DeVilbiss,* 729 P.2d 353 (Colo.1986). An issue raised on appeal is moot if the appellate court's resolution of it would have no practical legal effect upon an existing controversy. *Prefer v. PharmNetRx, LLC,* 18 P.3d 844 (Colo.App.2000).

Here, the order of possession determined only possession of the property and the improvements constructed on it. *See Aasgaard v. Spar Consolidated Mining & Development Co.,* 185 Colo. 157, 522 P.2d 726 (1974). Because the improvements have been demolished, meaningful relief is not possible. Accordingly, the appeal is moot as to the issue

of possession. *See Zoning Board of Adjustment v. DeVilbiss, supra.*

Having so concluded, we need not address tenant's assertions that the lease was terminated improperly or in bad faith. However, because they may affect the damage claims still pending in the trial court and otherwise may escape review, we address tenant's assertions that the trial court erred in holding that the city was not required to enter into good faith negotiations with it as a part of the condemnation proceedings and in holding that the property was condemned for a public, not private, purpose.

## II.

■ Tenant asserts that the trial court erred in concluding that because tenant's lease was not recorded, the city was not required to make a good faith offer to it pursuant to § 38–1–121, C.R.S.2002. We disagree.

Our review of a trial court's interpretation of a statute is de novo. *Rowell v. Clifford,* 976 P.2d 363 (Colo.App.1998).

Section 38–1–121(1), C.R.S.2002, describes the property interests that a condemning authority must resolve: "As soon as a condemning authority determines that it intends to acquire an interest in property, it shall give notice of such intent, together with a description of the property interest to be acquired, to anyone having an *interest of record* in the property involved" (emphasis added).

Section 38–1–121(3), C.R.S.2002, provides that "[n]othing in this section shall be construed as in any way limiting the obligation of the condemning authority to negotiate in good faith for the acquisition of *any property interest* sought prior to instituting eminent domain proceedings" (emphasis added).

Tenant argues that under § 38–1–121(3), property interests need not be recorded pursuant to § 38–35–109, C.R.S.2002, as a condition for receiving notice from and participating in negotiations with the condemning authority. Tenant argues that because the statute states that a condemning authority must negotiate with parties having an interest and the city knew of its leasehold interest, the city was thereby required to negotiate with it. We are not persuaded.

Legislative intent is first determined by looking at the statutory language itself, giving words and phrases their commonly understood meaning. *Mason v. Adams,* 961 P.2d 540 (Colo.App.1997). It is presumed that the legislature intended a just and reasonable result. *Smith v. Zufelt,* 880 P.2d 1178 (Colo.1994). When the language of the statute is plain and the meaning is clear, it should be interpreted and applied as written. *Southard v. Miles,* 714 P.2d 891 (Colo.1986).

Although the language of § 38–1–121(3) refers to "property interest" and not "interest of record," we must interpret the statute as a whole. *See City of Grand Junction v. Sisneros,* 957 P.2d 1026 (Colo.1998). In doing so, we find that the property interests contemplated by the statute include only those that have been recorded pursuant to Colorado's property recording statute.

The language of § 38–1–121(1) is plain, and the meaning is clear when it states that notice shall be given to anyone having an interest "of record" in the property. The phrase "of record," when used in reference to real property, commonly means that the instrument creating the property interest has been recorded with the county clerk. *See generally City of Lakewood v. Mavromatis,* 817 P.2d 90 (Colo.1991); *Collins v. Scott,* 943 P.2d 20 (Colo.App.1996). Furthermore, the purpose for recording is to give notice and protect the priority of the interest. *See City of Lakewood v. Mavromatis, supra.*

We conclude that because § 38–1–121 establishes which property interests a condemning authority must address, the phrase "of record" as used in § 38–1–121(1) limits the scope and meaning of § 38–1–121(3). Therefore, the property interests contemplated by § 38–1–121(3) are limited to recorded interests. *See City of Grand Junction v. Sisneros, supra.*

Thus, although the city had actual notice of tenant's unrecorded leasehold interest, it was not required to give tenant notice of its intention to condemn, nor was it required to enter into good faith negotiations with or

make a good faith offer to tenant, as a precursor to condemnation.

### III.

■ Tenant also contends that the trial court erred in concluding that the city condemned the property for a valid public use and that the acquisition was necessary. Specifically, tenant argues that the city only needed a small parking garage for the art museum expansion and library parking, but planned a larger parking garage for the sole benefit of tenants of a private high-rise condominium building to be constructed on the property. We disagree.

A trial court's findings of fact will not be disturbed on appeal unless they are so "clearly erroneous as to find no support in the record." *Alexander v. McClellan*, 56 P.3d 102, 105 (Colo.App.2002).

Section 38–1–101, et seq., C.R.S.2002, authorizes the exercise of the power of eminent domain, provided that the taking is necessary and its purpose is judicially determined to be a public use. *See* Colo. Const. art. II, § 15; *Buck v. District Court*, 199 Colo. 344, 608 P.2d 350 (1980).

■■ The mere fact that private interests may be involved in some aspect of the condemnation does not defeat a public purpose or necessity. Rather, in reviewing a condemning authority's finding that a proposed taking is for a public use, the court's role is to determine whether the essential purpose of the condemnation is to obtain a public benefit. *Denver West Metropolitan District v. Geudner*, 786 P.2d 434, 436 (Colo.App. 1989).

Here, the record supports the trial court's finding that the city condemned the property for a public use. The record shows that the city needed the property to build a parking garage, support buildings, and headquarters space for the Denver Art Museum, as well as to allow land for library expansion, all of which are valid public purposes. In addition, the city presented testimony that, while it originally planned to design the project around the property leased to tenant, it determined that the project would encroach upon that property, which therefore had to

be taken. Finally, the record shows that these public purposes were not incidental and were, in fact, the essential purposes of the city's project.

Thus, while a private developer who constructs a condominium building on a portion of the property may benefit from the city's project, the record supports the trial court's determination that the condemnation of the property was for a valid public purpose and was not incidental.

■ Tenant also argues that the acquisition of the property was not necessary. However, while the existence of a public purpose is always subject to judicial review, the necessity of an acquisition of a specific parcel may be reviewed by a court only upon a showing of bad faith. *Denver West Metropolitan District v. Geudner, supra.*

For the reasons already discussed, we conclude, as did the trial court, that the city did not exercise its power of eminent domain in bad faith. Therefore, we need not separately address necessity.

The appeal is dismissed as to the grant of possession, and the order is affirmed in all other respects.

Judge DAVIDSON and Judge WEBB concur.